## Case No. 15,157a.

### UNITED STATES v. The FRANCIS F. JOHNSON.

[20 Niles, Reg. 137.]

District Court, D. South Carolina. April 6, 1821.

SLAVE TRADE — VIOLATION OF LAWS — LIBEL OF FORFEITURE.

[A vessel which cleared from Alexandria for New Orleans with a cargo of slaves, and which had on board two slaves engaged at the time of seizure, and long prior to shipping the cargo, in performing duty as members of the crew, but not rated as members thereof in the ship's articles or log book, *held* not subject to forfeiture under the statute relating to the slave trade, (4 Bior. & D. Laws 97; 2 Stat. 426,) because the said two slaves were not entered in the manifest as part of the cargo.]

[This was a libel of forfeiture against the brig Francis F. Johnson for alleged violation of the laws relating to the slave trade.]

DRAYTON, District Judge. The brig Francis F. Johnson departed from Alexandria in the District of Columbia, laden with negro slaves, to be transported coastwise, and destined for the port of New Orleans, in the state of Louisiana. All the slaves on board, except two, were entered on the manifest. One of those two acted as cabin boy, and the other as cook, and afterwards as an ordinary seaman before the mast. This vessel is libelled under the 9th section of the act prohibiting the importation of slaves into any port or place within the jurisdiction of the United States of America (4 Bior. & D. Laws, 97 [2 Stat. 426]), without having entered in the manifest the said two negro slaves; and the

brig having been fallen in with by the United States vessel of war commanded by Capt. Lawrence Kearney, off the Salt Key Bank, in the entrance of the Gulf of Mexico, she has been sent in here for examination.

The claimants contend the vessel and negroes should be discharged, because the evidence will not support forfeiture under the statute, and upon this ground, I shall consider the case, as argued by Mr. Gadsden, district attorney for the United States, and Mr. Dunkin for the claimants.

The object of this act is to throw all proper difficulties in the way of the slave trade, and to close this with other doors of slave importation To that end, the 9th section of the act provides that no ship or vessel of the burthen of forty tons or more shall carry any negro, mulatto, or person of colour from one port of the United States to another for the purpose of transporting them, to be sold or disposed of as slaves, or to be held to service or labor, without the captain, master, or commander making out and subscribing duplicate manifests of every such negro, mulatto, or person of colour on board such ship or vessel; therein specifying the name and sex of each person, their age and stature, as near as may be, and the class to which they respectively belong, with the name and place of residence of every owner or shipper of the same; one of which manifests (executed under the forms prescribed in the act) to be retained by the collector of the port of departure and the other to be returned to the captain, master, or commander; with a permit specifying thereon, the number, names, and general description of such persons; and authorizing him to proceed to the port of his destination. In failure whereof every such ship or vessel, with her tackle, apparel, and furniture, shall be forfeited to the use of the United States; and may be seized, prosecuted, and condemned in any court of the United States having jurisdiction thereof. Besides which, the captain, master, or commander of every such ship or vessel forfeits for every such negro, mulatto, or person of colour so transported or taken on board contrary to the provisions of the act the sum of one thousand dollars; one moiety thereof to the United States, and the other moiety to the use of any person or persons who shall sue for and prosecute the same to effect. In addition to this act, an act of congress was passed on the 3rd March, 1819 [3 Stat. 532], entitled "An act in addition to the acts prohibiting the slave trade," by which the president of the United States is authorized to employ the armed vessels of the United States to cruise on the American coast, or coast of Africa, to enforce the acts of congress prohibiting the slave trade; and American vessels employed contrary thereto in traffic or transportation of slaves, may be seized by such armed vessels, and brought into port of the United States for examination and adjudication. Under these acts the seizure has been made by Cap-

tain Kearney, in the performance of his duties; and the cause has been proceeded in before me, argued with much ability by the counsel who are concerned.

From the evidence it appears the two negroes who were the cause of the seizure have been acting on board of the brig Francis F. Johnson, one as cabin boy and the other as cook or ordinary mariner, for months past in the coasting trade of the Bay of Chesapeake, and were in that capacity when the vessel took her departure from Alexandria and was detained by the Enterprize. It also appears they were not entered on the manifest as part of the cargo; neither were they rated on the ship's articles or log book as part of the crew, by reason of which no document appeared on board, when the vessel was seized, exempting the said two slaves from the provisions of the act, or excusing them for not being on the manifest. On behalf of the claimants it was contended they ought not to have been entered in the manifest, as they were not transported for sale, but were acting on board as servants to the master or owner, and that in such capacities they were exempted by the first section of the act for the government and regulation of seamen in the merchant service, passed July 20, 1790 [1 Stat. 131]. That they belonged to a citizen of Baltimore, in Maryland, who was agent of the owner of the vessel; and was either bargaining for, or had bargained for, the ownership of part of the vessel. The evidence also made known to the court that while the vessel was lying in the Potomac, ready for her voyage, the owner of the two slaves had intended to have gone in her to New Orleans, but, owing to sickness or some other cause, he did not. And that in a conversation on board he said, if one of those two negroes did not behave better, he might sell him at New Orleans. This was pressed by the district attorney as prima facie evidence they brought the vessel within the penalties of the act, and as a reason why the plea of exception should not be admitted.

I have considered this case with that attention which is due to its merits and to the mischiefs to be prevented; and being of opinion the case has not been sufficiently made out that these two negroes were to be transported to New Orleans for sale, or personal labor and service, but that they ought to be considered as part of the crew of the vessel, I must therefore discharge her and them from the seizure. I cannot, however, do so without previously mentioning that the conversation of the owner of the two negroes above alluded to throws suspicion on the case, and that, in all vessels engaged in transporting slaves from one state to another, all slaves acting as parts of the crew in any manner whatever should be noted on the vessel's articles as particularly designating them from the slaves on board as cargo, by which seizures, in a case like this, may hereafter be prevented. Captain Kearney has done noth-

ing more than his duty in seizing the vessel and bringing her in for adjudication. It is therefore ordered and decreed that probable cause of seizure be certified; that the libel be dismissed; the costs, however, to be paid by claimants.